KATHERINE F. CHESEBROUGH, as Administratrix, etc., Respondent, *v.* DANIEL D. CONOVER, Appellant.

It is the right of every citizen interested in any proposed legislation to employ, and agree to pay, an agent to draft a bill, and fairly and openly to explain it to a legislative committee or any member of the legislature, and ask to have it introduced; and a contract with the agent which does not call for more, and services under it which do not go further are not against public policy.

Plaintiff's complaint alleged in substance that defendant was interested in the construction of a street railroad; that he entered into a contract with C., plaintiff's testator, who had rendered services for him in and about the proposed road, by which he agreed that if C. would assist him in obtaining the rights, privileges and franchises, and draw up the papers, acts and resolutions, "to be presented to parties, to the legislature and to the common council  *  *  *  and go to Albany and use arguments," he would give to C., when the road was in operation, an amount specified of the bonds and stock of the company, for his services already rendered and to be rendered; that C. rendered the services specified. Upon the trial there was evidence to the effect that C. was employed as alleged to draw bills and explain them to members of the legislature, and to procure their introduction in the legislature; he was not a lobbyist, and had no acquaintance or influence with any member of the legislature, and it did not appear that he had any peculiar facilities for procuring legislation, or that he asked any member to vote for the bills, or did any thing except to explain them and request their introduction. *Held*, that a verdict for plaintiff could not be interfered with here.

Defendant's counsel, at the opening of the trial, moved for judgment on the complaint. Plaintiff's counsel, in opposing, stated, among other things, that on a former trial a verdict had been rendered for plaintiff. Defendant's counsel excepted, and asked the court to withdraw a juror, or discharge the jury, so that another jury might be impanelled who had not heard this statement. The motion was denied. In submitting the case, the court, at the request of defendant's counsel, instructed the jury that they had nothing to do with the former trial. *Held*, that the refusal of the court to grant the motion was not a legal error reviewable here; and that while the remark was improper, the vice was eliminated by the charge.

The answer alleged that the services in question were rendered for one P. Defendant was called as a witness in his own behalf. On cross-examination he testified that in an interview with P. he characterized plaintiff's claim as a blackmailing one. Plaintiff thereupon called P. as a witness, and he testified, under objection, that he did not so characterize the

claim, and gave the language of his conversation with defendant. *Held,* that the reception of the evidence was not error.

(Argued November 29, 1893; decided December 12, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 16, 1892, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

This action was brought to recover for services rendered by Julius F. Chesebrough, plaintiff's intestate, under a contract with defendant.

The facts, so far as material, are stated in the opinion.

*Austen G. Fox* for appellant. The charge of the court is the law of the case; the verdict is contrary to the charge and cannot be sustained. (*Rogers* v. *Murray,* 3 Bosw. 357; *Buckley* v. *G. P. & R. M. Co.,* 113 N. Y. 540; *Nangler* v. *Smith,* 90 id. 38; *Bunter* v. *O. M. Ins. Co.,* 4 Bosw. 251; *Elsey* v. *Metcalf,* 1 Den. 323; *Clark* v. *Richards,* 3 E. D. Smith, 89; Hayne on New Trials, 578, § 89; Hilliard on New Trials [2d ed.], 487, § 73; *Slatterie* v. *Pooley,* 6 M. & W. 608; *Helbing* v. *S. Ins. Co.,* 54 Cal. 159; *Fleming* v. *M. Ins. Co.,* 4 Whart. 59.) The plaintiff cannot recover the promised consideration for services, a material portion of which consisted of personal and private interviews with members of the legislature with the object of furthering pending legislation in the interest of the defendant. (*Powers* v. *Skinner,* 34 Vt. 274; *C. R. Co.* v. *C., S. P., M. & O. R. Co.,* 75 Wis. 248; *Marshall* v. *B. & O. R. Co.,* 16 How. 314; *N. I. Co.* v. *R. & D. E. Co.,* 129 U. S. 643; *Frost* v. *Belmont,* 6 Allen, 127; *Harris* v. *Roof,* 10 Barb. 489; *Sedgwick* v. *Stanton,* 14 N. Y. 289; *Wilber* v. *N. Y. E. C. Co.,* 12 N. Y. Supp. 456, 458; *Cary* v. *W. U. T. Co.,* 47 Hun, 614; *Richardson* v. *Crandall,* 48 N. Y. 348; *Chippinger* v. *Hepbaugh,* 5 W. & S. 315; *P. T. Co.* v. *Norris,* 2 Wall. 45; *Trist* v. *Child,* 21 id. 441; *Egerton* v. *Brownlow,* 4 H.

L. Cas. 1172; *Milbank* v. *Jones*, 127 N. Y. 376.) The court erred in allowing the introduction of testimony in rebuttal solely for the purpose of contradicting certain statements of the defendant, in which he characterized the present claim as a blackmailing operation, when the defendant had made no allusion thereto in his direct evidence, and the plaintiff's counsel had brought out the statements first on cross-examination, and then had himself read them in evidence as rebuttal from the minutes of the formal trial. (*Hildeburn* v. *Curran*, 66 Penn. St. 59; *Marx* v. *People*, 63 Barb. 618; *Baird* v. *Gillett*, 47 N. Y. 186; *Barnes* v. *Keene*, 132 id. 13; *Coleman* v. *People*, 58 id. 555.) It was error to compel the defendant to enter upon a trial before a jury to whom the plaintiff's counsel had stated that upon a former trial the plaintiff had secured a verdict. (*People* v. *Greenwall*, 115 N. Y. 520; *Williams* v. *B. E. R. R. Co.*, 126 id. 96; Hilliard on New Trials [2d ed.], 74, 75; *Crawford* v. *Morris*, 5 Gratt. 90; *Rieck* v. *Mayor, etc.*, 12 Daly, 72; *Ryan* v. *P. M. Co.*, 57 Hun, 257; *Hoxie* v. *H. Ins. Co.*, 33 Conn. 471; *Butler* v. *Slam*, 50 Penn. St. 456; *Martin* v. *Orndorf*, 22 Iowa, 504; *Melvin* v. *Easley*, 1 Jones, 386; *Tucker* v. *Hamilton*, 41 N. H. 317; *Brown* v. *Saineford*, 44 Wis. 291; *Erben* v. *Lorillard*, 19 N. Y. 29; *Lessen* v. *Perkins*, 39 Hun, 341.) The court erred in directing the jury that if they should find a verdict for the plaintiff, it was their duty to allow the plaintiff the value of $10,000 in stocks and $10,000 in bonds of this railroad, as of October, 1886. (*Hill* v. *W. E. S. R. Co.*, 158 Mass. 458.)

*Esek Cowen* for respondent. The contract was not *contra bonos mores*. (*Sedgwick* v. *Stanton*, 14 N. Y. 289; *Jenkins* v. *Hooker*, 19 Barb. 435; *Brown* v. *Brown*, 34 id. 537; *Cary* v. *W. U. T. Co.*, 47 Hun, 613; *Mills* v. *Mills*, 40 N. Y. 546; *Lyon* v. *Mitchell*, 36 id. 239.) Proof of performance was conclusively established by the defendant's own letters calling for and acknowledging performance. The other proofs were simply cumulative, and may be expunged

from the record without affecting in the slightest degree the sufficiency of the evidence. (1 Greenl. on Ev. § 189; *Bowen* v. *Nat. Bank*, 11 Hun, 228.) The amendment increasing the damages claimed from $10,000 to $15,000 was proper. The proof of value was in; the amendment neither introduced a new issue nor changed the old, and was properly granted. (*Knapp* v. *Roche*, 62 N. Y. 614; *Harris* v. *Funkidge*, 83 id. 97.) The refusal to impanel a new jury because of statement to the court as to verdict on former trial was proper. (*Holmes* v. *Moffat*, 120 N. Y. 160; *Gall* v. *Gall*, 114 id. 122.)

EARL, J. It appears from the complaint in this action that prior to 1879 the defendant had become interested in the construction of a railroad through 42d street in the city of New York, and that Mr. Chesebrough, who may be spoken of as the plaintiff, had rendered for him various services in and about the proposed road, and he alleges in the complaint that on the 7th day of March, 1879, the defendant agreed with him that if he would assist him in obtaining the rights, privileges and franchises, and authority for the building of the proposed road, and draw for him certain papers, acts and resolutions " to be presented to parties, to the legislature and to the common council, and write certain letters and see certain parties, and go to Albany and use arguments, he would give plaintiff, as soon as said extension of said railroad through 42d street was in operation, $10,000 of the bonds and $10,000 of the capital stock of the company for the services to be rendered and the services already rendered by him; that, at the request of the defendant, he drew certain proposed acts to authorize the construction and operation of the railroad through 42d street, and also drew various other proposed acts of the legislature and other papers and rendered certain other services mentioned in the performance of the contract alleged, for all of which services he demands judgment for $10,000 damages. The defendant, by his answer, put in issue the material allegations of the complaint as to the contract and the services claimed to have been rendered in pursuance

thereof. Upon the trial, the plaintiff gave evidence tending to prove the contract and the rendition of the services as alleged. There the defendant claimed that the services consisted, in part at least, of personal and private interviews with members of the legislature for the purpose of affecting pending legislation in the interest of the defendant, and that, therefore, the contract was against public policy and void, and that the defendant could not recover for the services; and upon his request the trial judge charged the jury as follows:

" That even if the jury find as a fact that there was a contract between the plaintiff and defendant, but that it was a part of such contract that the plaintiff, if requested, would go to Albany and see some member of the railway committee when one of the bills testified to was before such committee, and talk to him privately to further said bill so as to have the bill reported and passed along, or so that the bill could be passed; and that the plaintiff did talk with one or more members of such committee privately for such purpose; then the defendant is entitled to a verdict."

" That even if the jury find as a fact that there was a contract between the plaintiff and defendant, but that it was a part of such contract that the plaintiff should, if requested, have personal and private interviews with members of the legislature, having in view as one of their objects, the furthering of any bill pending in the legislature, or a committee thereof, so that the same could be reported by such committee and passed, then the jury need consider no other question, but must render a verdict for the defendant."

Notwithstanding the instructions thus given to the jury, they found a verdict in favor of the plaintiff, and it is now claimed by the learned counsel for the defendant that upon the undisputed evidence the verdict should have been in favor of his client.

It is conceded by both parties that the judge properly instructed the jury, but they differ as to the force and effect of the evidence. It is not to be denied that upon the evidence the case was a very strong one for the defendant, and

that the jury, with the power to weigh the evidence and draw inferences therefrom, could, under the instructions given, have found a verdict in his favor. But we think the jury could take a different view of the evidence, and find that the contract between the parties was not condemned by the rules of law, and that no services were rendered by the plaintiff in violation of the public policy embodied in the instructions given by the judge to the jury. If the plaintiff was employed to render what are commonly called lobby services in procuring the legislation desired by the defendant, then he should have been defeated in his action. Such contracts are condemned as against public policy, and the rules applicable to them are laid down in many decisions. (*Chippewa, etc., R. R. Co.* v. *Chicago, etc., R. R. Co.*, 75 Wis. 248; *Frost* v. *Inhabitants of Belmont*, 6 Allen, 152; *Harris* v. *Roof's Exrs.*, 10 Barb. 489; *Sedgwyck* v. *Stanton*, 14 N. Y. 289.) Here the jury could find that the plaintiff was not employed to render, and that he did not render, lobby services. He was not a lobbyist, and he had no acquaintance or influence with any member of the legislature, and it does not appear that he had any peculiar facilities for procuring legislation. The jury could find from the evidence that he was employed by the defendant to draw legislative bills and to explain them to members of the legislature, and to procure their introduction into the legislature, and nothing more. It does not appear that he asked or solicited any member of the legislature to vote for the bills, or that he did anything except to explain them, and request their introduction; and so much he could do without violating any public policy. It must be the right of every citizen who is interested in any proposed legislation to employ an agent for compensation payable to him, to draft his bill and explain it to any committee or to any member of a committee, or of the legislature, fairly and openly, and ask to have it introduced; and contracts which do not provide for more, and services which do not go farther, in our judgment, violate no principle of law or rule of public policy.

Even if the verdict of the jury was against the decided weight

of evidence we cannot, on that ground, interfere with it here, and here we are bound to take the view of the evidence most favorable to the plaintiff.

The judgment must, therefore, be affirmed, unless we can find error in some of the minor points to which our attention has been called.

At the commencement of the trial the defendant moved for judgment upon the complaint, on the ground that the services therein alleged were against good morals and condemned by public policy. In resisting that motion the counsel for the plaintiff stated, among other things, that on the former trial of the action a verdict had been rendered for the plaintiff. The counsel for the defendant took exception to this remark, and asked the court to withdraw a juror or to discharge the jury in order that another jury could be impanelled that had not heard the prejudicial remark. This motion was resisted by the counsel for the plaintiff and denied by the judge, and the counsel for the defendant excepted to such denial. The trial then proceeded, and in the submission of the case to the jury, upon the request of the defendant's counsel the judge instructed the jury that they had nothing to do with the former trial of the action, and that the case was to be decided in accordance with the evidence submitted to them on the pending trial, and with the rules of law laid down by the court. It is now claimed that the trial judge committed error in permitting the case to go to trial before the jury which had heard the objectionable remark. The remark was undoubtedly an improper one, but the refusal of the court to grant the defendant's motion was not a legal error reviewable in this court. The motion was addressed entirely to the discretion of the court which could grant or refuse it, taking into consideration the circumstances surrounding the case. It must be assumed here that the jury obeyed the instructions of the judge in reference to that remark, and that it did not influence them in the rendition of their verdict. Where a case has been once tried it is not generally possible to keep from the jury the result of the former trial, and it would be an

embarrassing and mischievous rule to lay down that if such result be brought out by statement or evidence, a fatal and incurable error has been committed; and that although the jury may be instructed to wholly disregard it, yet the vice is not eliminated, and the judgment upon the second trial is necessarily to be reversed. The remark complained of comes under the head of misconduct of an attorney upon the trial of an action which is generally, if not uniformly, held to be matter to be dealt with in the court below, and as not presenting any legal error for the consideration of this court. It is also like the case where upon the trial of an action the trial judge erroneously receives objectionable and damaging evidence, which he subsequently strikes out and directs the jury to disregard. In such cases we have uniformly held that the vice is eliminated and that theoretically at least the erroneous evidence found no lodgment in the minds of the jury.

The defendant testified, in answer to questions put to him upon his cross-examination, that in an interview with Mr. Phelps he characterized the plaintiff's claim as a blackmailing claim. Afterward the plaintiff called Mr. Phelps as a witness and asked him this question: "What was the interview between yourself and Mr. Conover?" The defendant's counsel objected to the question upon the ground that it related to a collateral matter brought out on cross-examination and not referred to in the direct examination. The objection was overruled and the witness answered that such a conversation took place. Then the examination proceeded as follows: Q. "Did he say anything about blackmailing in that conversation? Objected to on the same grounds. Objection overruled and defendant excepted. A. No. Q. What part of the conversation that you have recited took place? Same objection and objection overruled. Defendant excepted. A. I met Mr. Conover in the hallway of the Equitable Building, and I stopped him and said: Mr. Conover, I wish you would stop this suit of Mr. Chesebrough and try and settle it; that it will only make trouble and annoyance to all parties, and bring out things that would not be pleasant for your family and friends

to know about the passage of this railroad through the common council. I said, you ought to settle this up with Mr. Chesebrough. He said, I am not ready for that, or something of that kind, and in a pert way, and left me." We do not perceive that this evidence was very material or important. The defendant testified that he characterized the plaintiff's claim as a blackmailing claim. Mr. Phelps testified that he did not, and gave the language as he remembered it. What was said to the defendant about the claim, and what he said about it, and the fact that he did not claim in that conversation, as he alleged in his answer, that the services of the plaintiff were rendered for Phelps, was competent evidence in chief — certainly was not objectionable, and we do not think that any prejudicial error was committed in overruling the objection thereto.

Our attention is called to some other rulings of the trial judge during the progress of the trial, but they do not point out any error, and we do not deem them of sufficient importance to require any particular attention now.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed. _____